UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: | CASE NO.: 23-11046-PDR |
| MIRROR TRADING INTERNATIONAL (PTY) LTD, | CHAPTER 15 |
| Debtor in a foreign proceeding. | |
| _____/ | |
| CHAVONNES BADENHORST ST CLAIR COOPER, in her capacity as the Foreign Representative of Mirror Trading International (PTY) Ltd, | ADV. CASE NO.: 24-01152-PDR |
| Plaintiff, | |
| v. | |
| ANDREW MEIER, | |
| Defendant. | |
| _____/ | |

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant, Andrew Meier (the "Defendant"), by and through counsel, pursuant to Fed. R. Civ. P. 12(c) and Fed. R. Bankr. P. 7012(b), moves for judgment on the pleadings, as to the Complaint (ECF No. 1) filed by Plaintiff, Chavonnes Badenhorst St. Clair Cooper, in her capacity as the Foreign Representative of Mirror Trading International (PTY) Ltd. (the "Plaintiff").

1. On March 22, 2024, the Plaintiff filed the instant adversary proceeding. ECF No. 1. The Plaintiff's Complaint describes a fraudulent scheme, committed in South Africa, a foreign jurisdiction, by Debtor, Mirror Trading International (PTY) Ltd. (the "Debtor"). ECF No. 1 at 2–3.

2. The Debtor's fraudulent scheme, essentially a pyramid scheme, involved it conning people (the "Investors") to invest Bitcoin with the promise that doing so could result in returns up to 10% per month. ECF No. 1 at 4–7.

3. Cornelius Johann Steynberg ("Steynberg") was the Debtor's *sole* registered director and chief executive officer who orchestrated the unlawful scheme alleged in the Complaint. ECF No. 1 at 4, ¶ 14.

4. Steynberg's scheme lasted from April 2019 to December 2020. ECF No. 1 at 6–7, ¶ 21. The Debtor was then placed in insolvency proceedings in South Africa. The Complaint states, "all agreements between [the Debtor] and its investors … were unlawful and *void ab initio*." ECF No. 1 at 12, ¶ 33.

5. The Complaint states that the Investors hoodwinked by the Debtor, fall into one of three categories: (1) Class 1 Investors are those individuals that lost all of their investment; (2) Class 2 Investors are those individuals who lost some but not all of their investment; and (3) Class 3 Investors are those individuals who did not lose any of their investment and in fact received a return or profit. ECF No. 1 at 12–13, ¶ 36.

6. The Plaintiff asserts it was vested with claims against Class 3 Investors to recover any and all returns received from the Debtor's swindle in excess of their Bitcoin investment. ECF No. 1 at 13, ¶ 38–39. The Complaint does not allege any authority to pursue claims against Class 1 Investors or Class 2 Investors.

7. The Plaintiff's Complaint raises three counts against the Defendant based on South African law, specifically, §§ 26, 29, and 30 of the Insolvency Act, 24 of 1936 (the "Insolvency Act"). ECF No. 1 at 14–20.

8. All three Counts are premised on the general and conclusory allegation that "Defendant has been identified as *a Class 3 Investor* who received a Profit disposition from the Debtor." ECF No. 1 at 14, ¶ 42; 16, ¶ 51; 18, ¶ 58 (emphasis added).

9. In other words, each of the Plaintiff's claims fail, as a matter of law, if the Defendant was *not* a Class 3 Investor.

10. The Complaint "seek[s] a judgment: (a) avoiding and recovering dispositions without value of the Debtor to, or for the benefit of, Defendant in, at a minimum, *the amount set forth in Exhibit A*, pursuant to SA Insolvency Act § § 26 and 32; (b) avoiding and recovering preferential transfers to Defendant in, at a minimum, *the total amount set forth in Exhibit A*, pursuant to SA Insolvency Act § § 29, 30 and 32; [and] (c) that Plaintiff is entitled to recover from Defendant reasonable attorneys' fees, expenses, and costs of collection incurred in the prosecution of this Adversary Proceeding …." ECF No. 1 at 3, ¶ 8 (emphasis added).

11. The Defendant did invest Bitcoin with the Debtor through one or more accounts. ECF No. 11 at 7, ¶ 77. Nevertheless, the Complaint *erroneously* alleges that the Defendant is part of the lucky group of individuals who are Class 3 Investors. ECF No. 11 at 7, ¶ 77.

12. To support the general and conclusory allegation that the Defendant is a Class 3 Investor, the Complaint relies on an exhibit, which purportedly reflects the transaction history of two (2) of his accounts with the Debtor. ECF No. 1 at 23.

13. However, the Complaint's exhibit directly *contradicts and refutes* the general and conclusory allegation that the Defendant is a Class 3 Investor. ECF No. 1 at 23.

14. The exhibit to the Complaint reflects that the Defendant invested 4.43489528 Bitcoins with the Debtor, in two accounts, between September 28 and October 20, 2020. ECF No. 1 at 23.

15. The exhibit to the Complaint reflects that the Defendant withdrew a total of 4.6 Bitcoins from those two accounts on October 26, 2020. ECF No. 1 at 23.

16. The Complaint's exhibit reflects that, *as of* October 26, 2020, it appears the Defendant received a slight profit of 0.16510472 Bitcoin in excess of his investment. ECF No. 1 at 23.

17. However, the Complaint's exhibit also clearly reflects that the Defendant then deposited a total of 5.30165583 Bitcoins back into both accounts between October 28, 2020 and December 16, 2020. ECF No. 1 at 23.

18. The Defendant lost all 5.30165583 Bitcoins invested with the Debtor when the pyramid scheme collapsed in December 2020. To date, the Defendant has not recovered *any* portion of that amount. ECF No. 11 at 8, ¶ 84.[1]

19. Thus, on the face of the Complaint's exhibit, the Defendant is a Class 1 Investor because he lost all of his investment with the Debtor. ECF No. 1 at 23; ECF No. 11 at 8, ¶ 85.

## MEMORANDUM OF LAW

Civil Rule 12 provides, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Bankruptcy Rule 7012 incorporates Rule 12(c) and makes it relevant to this adversary proceeding. Fed. R. Bankr. P. 7012(b). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (citation omitted). "In determining whether a party is entitled to judgment on the pleadings, we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party." *Id.* "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Id.*

"Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). "Indeed, when the exhibits *contradict* the general and conclusory allegations of the pleading, *the exhibits govern*." *Id.* (emphasis added). Additionally, "[i]f an affirmative defense is clearly established by the pleadings, then a judgment on the pleadings is appropriate." *Bakst v. Delray Stake & Shaving, Inc. (In re Brammeier)*, 20 Fla. L. Weekly Fed. B415

---

[1] The Complaint and its exhibit omit a third account that the Defendant had with the Debtor. Specifically, the omitted account is User ID: 34366645 / Username: nmeier (the "Missing Account"). ECF No. 11 at 8, ¶ 86. The Missing Account had approximately 2.5 Bitcoins, which the Defendant invested with the Debtor and that he also lost. ECF No. 11 at 8, ¶ 87. However, it is unnecessary to consider the Missing Account for purposes of this Motion.

(Bankr. S.D. Fla. Feb. 21, 2007) (*citing Bennett v. Par*ker, 898 F.2d 1530, 1535, n.2 (11th Cir. 1990)).

Here, not only was the Defendant an innocent victim of the Debtor's fraudulent pyramid scheme, which resulted in the total loss of all of the Bitcoins he invested—to add insult to injury—the Plaintiff has caused him to incur attorney fees and costs to defend the instant complaint, which on its face fails to state any cause of action and was filed it in a forum that most likely cannot support the exercise of personal jurisdiction over him. It would appear the Plaintiff gambled, in filing this action, that the Defendant would not bother to research South African law because that research strongly suggests her claims against him are borderline—if not outright—frivolous. To the extent the Plaintiff intends to argue that decisions from a foreign tribunal foreclose any of the arguments made herein, the Defendant disputes those decisions would constitutionally bind him since he received no notice or opportunity to be heard prior to their entry.

For the reasons that follow, there are no material facts in dispute and the Defendant is entitled to judgment as a matter of law. Although the Defendant *could* have raised some of the arguments made here in a motion to dismiss, he is not required that he do so. *See* Fed. R. Civ. P. 12(b) (emphasis added) ("[A] party *may* assert the following defenses by motion … lack of personal jurisdiction … improper venue … failure to state a claim upon which relief can be granted; and … failure to join a party under Rule 19.").[2] Conversely, presenting these issues under Rule 12(c) enables the Defendant to secure a judgment on the merits, which would make him the prevailing party. Consequently, the Defendant would also be entitled to recover his attorney fees and costs.

**I. The Pleadings Reflect that the Plaintiff Fails to State any Cause of Action Entitling the Defendant to Judgment as a Matter of Law**

"[Pyramid] schemes often do not invest the funds received, but use the money from new investors to pay extravagant returns to earlier investors." Zingapi Mabe, *Setting aside Transactions*

---

[2] The Defendant's Answer also asserts, as affirmative defenses, improper venue and that the Court lacks personal jurisdiction over him. ECF No. 1 at 9, ¶ 91–99. However, it is unnecessary to consider those defenses for purposes of this Motion. Nothing herein should be construed as the Defendant's consent to personal jurisdiction.

*from Pyramid Schemes as Impeachable Dispositions under South African Insolvency Legislation*, PER / PELJ 2016(19) at 6. "They are usually doomed to collapse because the income made by them is far less than the pay-outs." *Id.* "As a result, the scheme eventually collapses when the total inflow of funds cannot sustain the outflow of returns allegedly due to the participants." *Id.*

"When these schemes *collapse*, they are often insolvent." Mabe, PER / PELJ 2016(19) at 6 (emphasis added). "The investors who have lost money in the scheme and who are often without legal resources themselves become concurrent creditors of the insolvent estate." *Id.* at 6–7. "In addition, the investors who deposited money into the scheme *and took their gains without re-investing these funds* are often left trying to defend applications … for the return of their investment to the insolvent estate." *Id.* at 7 (emphasis added).

In *Fourie v. Edeling*, 2005 4 All SA 393 (SCA) para 16, an insolvency case involving a pyramid scheme, the Court held that under § 26 of the Insolvency Act, only the *gains* an investor received from it could be set aside. "[A] disposition was not made for value if the payment of returns was illegal." Mabe, PER / PELJ 2016(19) at 8. "A promise to pay returns on payments that were illegal is null, and any payment in this regard would be a disposition not made for value." *Id.* However, "[o]nly the actual payment of the *accrued gains* would be a disposition without value." *Id.* (emphasis added). It was undisputed that "the repayment of an investor's capital was *not a disposition without value*, and therefore could not be set aside as such." *Id.* (emphasis added).

"This was because the investor's *condictio* [*ob turpem vel iniustam causam*] prevented it from taking on this character." Mabe, PER / PELJ 2016(19) at 8–9.[3] Repayment of an investor's capital is not voidable because "[t]he disposition was made to discharge the responsibility to return the illegal payment." *Id.* at 9. In *Fourie*, the Court "ordered that only actual payments, whether profit or

---

[3] Under South African law, "*condictio ob turpem vel iniustam causam* is an unjustified enrichment claim based on the fact that the amount claimed was transferred pursuant to an agreement that is void and unenforceable because it is illegal." Mabe, PER / PELJ 2016(19) at 9, n. 54.

interest, *in so far as they exceed the investment* of each particular investor, be set aside as dispositions without value." *Id.* at 8 (emphasis added). "As a result, *the capital repayments* by the illegal scheme to the investor *could not be set aside* as dispositions without value." *Id.* (emphasis added).

Here, the Complaint alleges that the Debtor engaged in a pyramid scheme in South Africa. Under South African law, only the *gains*, if any, received by an investor to a pyramid scheme can be set aside under the Insolvency Act. The Complaint's allegation that the Defendant is a Class 3 Investor who received a gain from the pyramid scheme is a general and conclusory allegation. However, the exhibit attached to the Complaint includes specific factual details. Moreover, the specific factual details in the exhibit contradict the allegation that the Defendant is a Class 3 Investor who received a gain. As such, the exhibit governs over the Complaint's general and conclusory allegation to that effect.

With the forgoing in mind, the Complaint's exhibit reflects that the Defendant invested a total of 4.43489528 Bitcoins with the Debtor, in two accounts, between September 28 and October 20, 2020. ECF No. 1 at 23. It also reflects that the Defendant withdrew a total of 4.6 Bitcoins from those two accounts on October 26, 2020. ECF No. 1 at 23. Thus, on the face of the exhibit, *as of* October 26, 2020, it appears the Defendant received a miniscule profit of 0.16510472 Bitcoin (less than 1) in excess of his investment. ECF No. 1 at 23. Although the Complaint does not state the amount of Bitcoins the Plaintiff seeks the return of, presumably, she seeks the return of 0.16510472 Bitcoin, which is the only plausible profit to the Defendant.

To the extent that the Plaintiff seeks the return of *all* 4.6 Bitcoins withdrawn on October 26, 2020, 4.43489528 of those Bitcoins were repayment of the Defendant's capital investment, which was not a disposition without value, and therefore cannot be set aside as such under the Insolvency Act. Under the theory *condictio ob turpem vel iniustam causam*, repayment of the 4.43489528 Bitcoins were made to discharge the Debtor's responsibility to return the illegally retained initial investment

7

the Defendant made. Nevertheless, to the extent the Plaintiff's claims are *limited* to the return of 0.16510472 Bitcoin, such claim must also fail.

That claim fails because the exhibit to the Complaint also clearly reflects that the Defendant deposited a total of 5.30165583 Bitcoins back into both accounts between October 28, 2020 and December 16, 2020. ECF No. 1 at 23. In other words, the Defendant re-invested his initial capital of 4.43489528 Bitcoins, he re-invested the merger gain he received of 0.16510472 Bitcoin, and he invested additional capital of 0.70165583 Bitcoin. The Defendant ultimately lost *all* 5.30165583 Bitcoins invested with the Debtor when the pyramid scheme collapsed in December 2020. To date, the Defendant has not recovered any portion of that amount. ECF No. 11 at 8, ¶ 84. Thus, on the face of the pleadings, the Defendant is a Class 1 Investor because he lost all of his investment with the Debtor. ECF No. 1 at 23; ECF No. 11 at 8, ¶ 85. Therefore, the Plaintiff fails to state any cause of action and the Defendant is entitled to judgment as a matter of law under Rule 12(c).

**II. The Pleadings Reflect that the Plaintiff Fails to State a Cause of Action under §§ 26, 29, or 30 of the Insolvency Act Entitling the Defendant to Judgment as a Matter of Law**

"There are several defences available to creditors that are party to pre-liquidation transactions." Marumoagae, *Impeachable Transactions and Available Defences to those who Transacted with Companies Before Liquidation*, Speculum Juris Vol. 36 No. 2 at 301 (2022). "Where liquidators allege that there was no value derived by companies in the transactions sought to be set aside, creditors against whom such applications are brought can demonstrate that such companies *derived value* in such transactions." *Id.* (emphasis added). "Similarly, creditors faced with undue preference claims may illustrate that there was *no intention to be preferred* above other creditors." *Id.* (emphasis added). This can be accomplished by "illustrat[ing] that the companies did not intend to prefer them over other creditors when the dispositions were made." *Id.*

"They can illustrate that the companies' dominant and factual intention when such

transactions were concluded was not to frustrate adequate distribution of available assets on liquidation." Marumoagae, Speculum Juris Vol. 36 No. 2 at 301. "Liquidators have the *onus to establish that the companies' real intention* was to prefer creditors who benefitted from the dispositions above other creditors." *Id.* (emphasis added). "Transactions listed in sections 26, 30 and 31 of the Insolvency Act do not appear to have expressly stated defences, as is the case with the transactions listed in section 29 of this Act." *Id.* "The defences of the former provisions appear to be more about disproving liquidators' claims by alleging the converse of what is stated by liquidators." *Id.* at 301–02.

A. The Plaintiff's Fails to State a Cause of Action under § 26 of the Insolvency Act

Section 26 of the Insolvency Act provides, "[e]very disposition of property not made for value may be set aside by the Court if such disposition *was made by an insolvent* … within two years of the sequestration of his estate, and the person claiming under or benefited by the disposition is unable to prove that, immediately after the disposition was made, the assets of the insolvent exceeded his liabilities …." § 26(1)(b) of the Insolvency Act (emphasis added). "[I]f it is proved that the liabilities of the insolvent at any time after the making of the disposition exceeded his assets by less than the value of the property disposed of, it may be set aside only to the extent of such excess." § 26(1)(b) of the Insolvency Act.

Section 26 transactions are referred to as "[d]ispositions made without value." Mabe, PER / PELJ 2016(19) at 3. "The liquidator must further determine whether the company derived value from the transaction sought to be impeached." Marumoagae, Speculum Juris Vol. 36 No. 2 at 299. "The Supreme Court of Appeal in *Strydom N.O. and Another v Snowball Wealth (Pty) Ltd and Others* [2022 5 SA 438 (SCA) para 36], held that 'the phrase 'not made for value' in s 26(1) of the Insolvency Act 24 of 1936 means for *no value at all*.'" *Id.* (emphasis added).

In *Goode, Durrante and Murray Ltd v. Hewitt and Cornell*, 1961 4 SA 286, 291 (N), the Court

held that the word "value" is not restricted to a monetary or tangible material consideration. The insolvent would have derived value if the creditor that benefited from the transaction demonstrates benefits derived by the insolvent person directly from the transaction. *Id.* In that case, a defendant argued that where the insolvent person entered into a transaction that enabled it to be financially stable due to the opportunities created by such transaction, that would be a clear indication of value. *Id.* The Court in *Goode* accepted that such a transaction, which led to the continued financial stability of the insolvent company, was for value. *Id.*

Here, even if the Complaint did not establish that the Defendant was not in fact a Class 1 Investor, it could be argued that he did not receive a "disposition" from the Debtor, as that term is defined in the Insolvency Act simply because of how pyramid schemes operate. The Insolvency Act defines "disposition" as "any transfer or abandonment *of rights to property* and includes a sale, lease, mortgage, pledge, delivery, payment, release, compromise, donation or any contract therefor …." § 2 of the Insolvency Act (emphasis added). As noted above, in pyramid schemes initial investors are paid using the funds from subsequent investors. The Complaint also alleges that all transactions between the Debtor and the Investors are *void ab initio*. As applied to this case, the Debtor never had *any* rights to or ownership interest in any of the Bitcoins it came into possession of. All times material hereto, the Bitcoins held by the Debtor belonged to third parties, including the Defendant. Thus, any Bitcoin the Defendant received was property of a third party and not that of the Debtor.

Moreover, a transaction can only be set aside under § 26(1)(b) of the Insolvency Act if the Debtor did not receive value. It could also be argued any "disposition" the Defendant received from the Debtor provided it value because it enabled the Debtor to be financially stable due to the opportunities created by such transactions, which is a clear indication of value. Specifically, any disposition to the Defendant in October 2020 allowed the Debtor to gain additional investors by giving the false impression that the scheme was in fact legitimate. Indeed, the October 26, 2020

10

disposition led the Defendant to believe as such and—for that reason alone—he invested an additional 5.30165583 in Bitcoins between October 28, 2020 and December 16, 2020, all of which he ultimately lost.

Further, a transaction can only be set aside under § 26(1)(b) of the Insolvency Act if the Debtor was insolvent at the time it was made. As the noted above, pyramid schemes usually only become insolvent when the schemes *collapse* because the scammer is unable to pay subsequent investors. However, in this case, the Defendant withdraw a total of 4.6 Bitcoins from his two accounts on October 26, 2020, nearly two (2) months *prior to* the collapse of the Debtor's scheme in December 2020. ECF No. 1 at 23. The very fact that the Defendant was able to make the withdrawals on October 26, 2020 supports the inference that the Debtor was *not* insolvent at that time. If the Debtor had been insolvent, it would have been unable to process the Defendant's withdrawals. Therefore, the Plaintiff fails to state a claim under § 26(1)(b) of the Insolvency Act and the Defendant is entitled to judgment as a matter of law under Rule 12(c).

B. <u>The Plaintiff's Fails to State a Cause of Action under § 29 of the Insolvency Act</u>

Section 29 of the Insolvency Act provides, "[e]very disposition of his property made by a debtor not more than six months before the sequestration of his estate … *which has had the effect of preferring one of his creditors above another*, may be set aside by the Court if immediately after the making of such disposition the liabilities of the debtor *exceeded* the value of his assets, unless the person in whose favour the disposition was made proves that the disposition *was made in the ordinary course of business and that it was not intended thereby to prefer one creditor above another*." § 29(1) of the Insolvency Act (emphasis added). Section 29 transactions are referred to as "[v]oidable preferences." Mabe, PER / PELJ 2016(19) at 3–4. "[T]hese dispositions can … be set aside if the trustee or liquidator can show that immediately after the disposition was made, the liabilities of the insolvent exceeded his assets." *Id.* at 4.

"However, … if it can be shown that the disposition was made in the ordinary course of the business of the insolvent and it was not intended to prefer one creditor over the others, the disposition will not be set aside." Mabe, PER / PELJ 2016(19) at 4. "An objective test is used to determine whether or not the disposition was made in the ordinary course of business." *Id.* "[T]he focus should not be on the nature of the insolvent's general business practices." *Id.* at 12. "Instead, the disposition should itself be scrutinised [sic], taking into account its cause." *Id.*

In *Griffiths v. Janse van Rensburg*, 2015 ZASCA 158 (Oct. 26, 2015), another insolvency case involving a pyramid scheme, the Court examined whether two capital repayments to an investor were made "in ordinary course of business" under § 30 of the Insolvency Act. There, the Court "agreed that the agreements were illegal and void, as per *Fourie v Edeling*." Mabe, PER / PELJ 2016(19) at 17. "However, the claim for repayments should have been based on the *condictio ob turpem vel iniustam causam*[4] ["*condictio*"] for the immediate repayment of the two capital sums." *Id.*

"The court therefore had to determine whether or not a payment under the *condictio* qualified as one which was made in the ordinary course of business." Mabe, PER / PELJ 2016(19) at 17. "In this regard, [the Court] said that had [the investor] made claims in terms of the *condictio*, he would have been successful." *Id.* "The dispositions would then have derived from lawful and enforceable obligations." *Id.* Unfortunately for the investor in *Griffiths*, he did not raise the *condictio* claim. *Id.* at 17–18. The Defendant in this case has raised it and this affirmative defense is clearly established by the pleadings. *See* ECF No. 11 at 11–12, ¶¶ 118–19.

Importantly, to qualify as a § 29 voidable preference, "[t]he third party to the transaction, *as a matter of fact*, should have been preferred above other creditors." Marumoagae, Speculum Juris Vol. 36 No. 2 at 300 (emphasis added). "The defence of lack of intention to prefer, mandates going beyond the actual effect of the transaction to the evaluation of the *subjective state of mind of those who*

---

[4] *See supra* n.3.

*represented the company." Id.* at 306 (emphasis added). It has been noted:

> The mere fact that the effect of the transaction is to prefer one creditor above another does *not* necessarily mean that there has been a voidable preference. Obviously in *every* case where one creditor is paid and others are not there is a preference in favour of the creditor who has been paid. Something additional is required to impeach the transaction. *That additional requirement is an intention to prefer on the part of the debtor*.

*Id.* (emphasis added). "This is a clear indication that intention is also an *integral part* of [§ 29] voidable preferences." *Id.* (emphasis added).

Here, the Plaintiff's complaint alleges in general and conclusory fashion that the Defendant is a Class 3 Investor who received a gain on the Bitcoin he invested in the Debtor's pyramid scheme. The exhibit to the Complaint reflects that the Defendant invested 4.43489528 Bitcoins in two accounts with the Debtor between September 28 and October 20, 2020. ECF No. 1 at 23. The exhibit reflects that the Defendant withdrew a total of 4.6 Bitcoins from those two accounts on October 26, 2020. ECF No. 1 at 23. Of that amount, 4.43489528 Bitcoins was a repayment of the Defendant's capital investment, which is not voidable under *condictio ob turpem vel iniustam causam* because they were made to discharge the Debtor's responsibility to return the illegally retained investment to him. In other words, the capital repayment was made in ordinary course of business.

A transaction can only be set aside under § 29(1) of the Insolvency Act if the Debtor was insolvent at the time it was made. As noted, pyramid schemes become insolvent when they collapse. Although the Defendant appears to have received a profit of 0.16510472 Bitcoin, *as of* October 26, 2020, in excess of his investment, the very fact that he was able to make the withdrawals supports the inference that the Debtor was *not* insolvent at that time. ECF No. 1 at 23. Moreover, as already noted, the Defendant subsequently re-invested any merger gain he received, he re-invested his initial capital, and he invested additional capital for a total of 5.30165583 in Bitcoins, all of which he ultimately lost when the scheme finally did collapse in December 2020.

Further, the mere fact that the effect of a transaction preferred one creditor above another does *not* necessarily mean that there has been a voidable preference under § 29(1) of the Insolvency Act. Obviously in every case where one creditor is paid and others are not there is a preference in favor of the creditor who has been paid. As such, South African law, additionally requires that there the principals of the debtor had the *subjective* intention to prefer one creditor over its others for there to be a voidable preference. The Complaint does not allege that Steynberg had the subjective intention to do so even though it is an element of the Plaintiff's § 29 claim. Conversely, the Defendant's Answer asserts that Steynberg did not have the *subjective* intention to prefer him over the Debtor's other creditors. ECF No. 11 at 10–11, ¶ 110. As explained more thoroughly below, the Plaintiff will not be able to establish that Steynberg subjectively intended to prefer the Defendant over the Debtor's other creditors. Therefore, the Plaintiff fails to state a claim under § 29(1) of the Insolvency Act and the Defendant is entitled to judgment as a matter of law under Rule 12(c).

C. The Plaintiff's Fails to State a Cause of Action under § 30 of the Insolvency Act

Section 30 of the Insolvency Act provides, "[i]f a debtor made a disposition of his property at a time when his liabilities *exceeded* his assets, *with the intention of preferring one of his creditors above another*, and his estate is thereafter sequestrated, the Court may set aside the disposition." § 30(1) of the Insolvency Act (emphasis added). Section 30 transactions are referred to as "[a]n undue preference." Mabe, PER / PELJ 2016(19) at 4. However, similar to § 29 transactions, § 30 undue preferences, *require* the debtor's principals to have made the disposition with the subjective intention to prefer one creditor to the debtor's other creditors.

"The *motive or state of mind of those who represented the company* at the time of the disposition is crucial to establish whether there is an intention to prefer one or some creditors above others." Marumoagae, Speculum Juris Vol. 36 No. 2 at 306 (emphasis added). In *Cooper and Another v.*

14

*Merchant Trade Finance Ltd*, 2000 3 SA 1009 (SCA) para 5, the Court held that "[i]n seeking to establish whether the requisite intention was present in the debtor's mind at the time of making the disposition the test is a subjective one." To be clear, "[t]he test here is *subjective*, namely whether or not the insolvent *intended the disposition to have the effect of preferring one creditor over the others*, and whether or not this was the *main purpose* of making the disposition." Mabe, PER / PELJ 2016(19) at 4 (emphasis added).

Here, the Plaintiff's complaint alleges that the Debtor made an undue preference to the Defendant that can be set aside under § 30 of the Insolvency Act. However, under South African law, in order for the Plaintiff to prevail on that claim, she has to demonstrate that the Debtor's *sole* principal, Steynberg, *subjectively* intended to prefer the Defendant over the Debtor's over creditors *and* that this was the main purpose of making the disposition. Oddly, even though it is an element of the Plaintiff's § 30 claim, the Complaint does not make any allegations regarding Steynberg's subjective intentions. Conversely, the Defendant's Answer asserts there was no subjective intention by Steynberg to prefer him over the Debtor's other creditors. ECF No. 11 at 11, ¶ 114.

Indeed—any argument that Steynberg did *subjectively* intend to prefer the Defendant over the Debtor's other creditors *and* that this was the main purpose of making any disposition—would be implausible. The Debtor did not even initiate the disposition to the Defendant. The Defendant simply initiated a withdrawal from his two investment accounts held with the Debtor. The Defendant is being sued for the simple reason that this fortuitously occurred *prior to* the collapse of Steynberg's pyramid scheme, which he was not a part of. There is no evidence that Steynberg personally knew the Defendant or that he was even aware of the Defendant's withdrawal. As already noted, the very fact that the Defendant was able to make the withdrawals on October 26, 2020 supports the inference that the Debtor was *not* insolvent at that time.

Further, even if the Plaintiff tried to claim that Steynberg subjectively intended to prefer the

15

Defendant over the Debtor's over creditors, that would make him an indispensable party to this proceeding under Civil Rule 19. *See* Fed. R. Civ. P. 19(a)(1)(A) ("A person who is subject to service of process … must be joined as a party if … in that person's absence, the court cannot accord complete relief among existing parties …."). In that regard, if this matter proceeded, the Defendant would exercise his right under § 32(2) of the Insolvency Act to compel Steynberg's testimony for the jury to hear. *See* § 32(2) of the Insolvency Act (emphasis added) ("In any such proceedings the insolvent may be compelled to give evidence on a subpoena issued *on the application of any party to the proceeding*s or he may be called by the Court to give evidence.").

"Dismissal of an action pursuant to Federal Rule of Civil Procedure 12(b)(7), for failure to join a party under Rule 19, is a 'two-step inquiry.'" *Moreiras v. Scottsdale Ins. Co.*, No. 20-cv-21303, 2020 U.S. Dist. LEXIS 76016, at *2 (S.D. Fla. Apr. 29, 2020) (citations omitted). "First, a court must decide whether an absent party is required in the case under Rule 19(a)." *Id.* (quotation omitted). "If a court determines that an absent party does satisfy the Rule 19(a) criteria, *i.e.*, that the party is a required party, the court must order that party joined if its joinder is feasible." *Id.* (citations omitted). "If the absent party is not required, the litigation continues as is." *Id.*

"Second, if the absent party's joinder is not feasible— *i.e.*, … the absent party is not subject to the court's personal jurisdiction, or the absent party properly objects to the venue of the action— the court must consider if, 'in equity and good conscience, the action should proceed among the existing parties or should be dismissed.'" *Moreiras*, 2020 U.S. Dist. LEXIS 76016, at *3–4 (quotation omitted). "Thus, dismissal for failure to join an indispensable party is only appropriate *where the nonparty cannot be made a party*." *Id.* at *4 (quotation omitted) (emphasis added).

Here, the Plaintiff did not name Steynberg as a party to the instant proceeding even though he is most likely an indispensable party. Although the Complaint does not include an allegation one-way or the other, it appears Steynberg is a resident of South Africa. Moreover, the Complaint

16

alleges that Steynberg was arrested in Brazil in December 2021. ECF No. 1 at 7, ¶ 23. More likely than not, the Court could not establish personal jurisdiction over Steynberg who is a foreign national incarcerated in Brazil. Conversely, in Steynberg's absence, the Court cannot accord complete relief between the Plaintiff and the Defendant because it will be impossible for the Plaintiff to establish the requisite intent necessary to support a *prima facie* claim under § 29(1) or § 30(1) of the Insolvency Act and/or the Defendant's affirmative defense of good-faith under § 33. Therefore, the Plaintiff fails to state a claim under § 30(1) of the Insolvency Act and the Defendant is entitled to judgment as a matter of law under Rule 12(c).

**WHEREFORE**, the Defendant respectfully request that the Court: (a) enter judgment on the pleadings in favor of the Defendant under Fed. R. Civ. P. 12(c); (b) award the Defendant attorney fees and costs incurred in this action as prevailing party; (c) reserve jurisdiction to determine the amount of those fees and costs at a later date; and (d) grant any other relief deemed just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on May 22, 2024 on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF, which is incorporated by reference to reflect the names and addresses of the parties receiving notice.

Respectfully Submitted By:

Gulisano Law, PLLC
1701 N. Federal Highway, Suite 4
Boca Raton, FL 33432
954-947-3972 – office
michael@gulisanolaw.com – email

s/ Michael Gulisano
Michael Gulisano, Esquire
Florida Bar No.: 87573